IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| MARY ANN DOLL-CARPENTER, | ) | Case No. 4:11CV00028 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | By: Jackson L. Kiser |
| Defendant. | ) | Senior United District Judge |

Before me is the Report and Recommendation of the United States Magistrate Judge, recommending that Defendant's Motion for Summary Judgment be granted and the Commissioner's final decision be affirmed. Plaintiff has filed timely objections to the Magistrate's Report and Recommendation. I have reviewed the Magistrate Judge's recommendation, Plaintiff's objections, and the relevant portions of the record. The matter is now ripe for decision. For the reasons stated below, I will **ADOPT** the Magistrate's Report and Recommendation and **GRANT** the Defendant's Motion for Summary Judgment. I **AFFIRM** the Commissioner's final decision and **DISMISS** this case from the docket of this Court.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

On August 5, 2008, Plaintiff Mary Ann Doll-Carpenter ("Plaintiff") filed concurrent applications for Social Security Disability Insurance benefits and Supplemental Security Income benefits pursuant to Title II and Title XVI of the Social Security Act, respectively. *See* 42 U.S.C. §§ 401–433, 1381–1383f; (R. 152–59.) In her applications, she alleged that she was disabled as of June 18, 2008, due to the effects of diabetes, high blood pressure, high cholesterol, a heart murmur, and prior knee surgeries. (R. 182.) Plaintiff's claims were denied initially on

1

November 20, 2008, and on reconsideration on February 12, 2009. (R. 87–94, 101–117.) Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 119–20.) On February 22, 2010, the ALJ held an administrative hearing to determine whether Plaintiff was under a disability within the meaning of the Social Security Act. (R. 34–73.) Plaintiff, represented by counsel, and Melissa Stewart, an impartial vocational expert, both appeared and testified. (*Id.*)

On March 10, 2010, the ALJ submitted his decision including findings of fact and conclusions of law. (R. 13–28.) The ALJ applied the five step evaluation process as set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since June 18, 2008—her alleged disability onset date—and that she met the insured status requirements under the Social Security Act through December 31, 2013. (R. 17.) He proceeded to find that Plaintiff suffered from the following severe impairments: "diabetes mellitus; arthritis of the knees; asthma; hypertension; carpal tunnel syndrome; bacterial infections; heart murmur; obesity; an affective disorder; an anxiety disorder; and borderline intellectual functioning." (R. 17–18.) The ALJ found that these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, subpart P, appendix 1. (R. 18–19.) Based on the evidence, he determined that Plaintiff retained "the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with postural, manipulative, environmental, and mental restrictions."[1] (R. 19–26.) Although the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," he found that her "statements concerning the

---

[1] The applicable regulations define light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

2

intensity, persistence, and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with" his determination as to residual functional capacity. (R. 25–26.) The ALJ found Plaintiff able to perform her past relevant work as a parking lot attendant, both as she actually performed the job in the past and as it is generally performed in the national economy.[2] (R. 26–27.) Furthermore, after considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that jobs of which Plaintiff was capable, such as a school bus monitor, restroom attendant, and ticket taker, existed in significant numbers in the national economy. (R. 27–28.) Accordingly, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Act from June 18, 2008, to March 10, 2010. (R. 28.)

Subsequently, Plaintiff appealed the ALJ's decision to the Appeals Counsel by letter dated April 28, 2010. (R. 5.) The Appeals Council found no basis to review the decision, denied review, and adopted the ALJ's decision as the final decision of the Commissioner. (R. 1–3.) Plaintiff, proceeding *pro se*, instituted the present civil action in this Court on July 6, 2011, seeking judicial review of the Commissioner's decision. (Compl. [ECF No. 3].) Thereafter, I referred this matter to Magistrate Judge B. Waugh Crigler for consideration of Plaintiff's and the Commissioner's dispositive motions. (Order, Dec. 2, 2011, [ECF No. 12].) On April 3, 2012, Judge Crigler issued his Report and Recommendation in which he concluded that I should grant the Commissioner's Motion for Summary Judgment, affirm the Commissioner's final decision, and dismiss this matter from the docket. (Rep. and Rec. [ECF No. 22].)

On April 13, 2012, Plaintiff filed a timely objection to Judge Crigler's Report and Recommendation. (Pl.'s Obj. [ECF No. 23].) Although Plaintiff clearly great umbrage at the

---

[2] Because the record showed that Plaintiff only performed this job for six months, however, the ALJ proceeded to the next step of the evaluation sequence. (R. 27.)

3

Report and Recommendation, the specific grounds for her objection are less than clear. Her objection appears to be a hodgepodge consisting of a general objection, restatement of various evidence and arguments already presented to the ALJ and Judge Crigler, and certain specific objections. The Commissioner filed no response to Plaintiff's objection.

## II. <u>STANDARD OF REVIEW</u>

The proper standard of review applicable to a determination by the Social Security Commissioner is well-established. Congress has limited the judicial review that I may exercise over decisions of the Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. *See* 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545; *see Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir. 1984) (noting that it is the role of the ALJ, not the vocational expert, to determine disability). The regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. Unless the decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ

4

and the Commissioner. *See id.* §§ 404.1527(e), 416.927(e); *see also Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. *Laws*, 368 F.2d at 642. In reviewing the evidence, I must not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the Secretary.[3]" *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589).

An additional standard of review, however, applies to this Court's consideration of Judge Crigler's Report and Recommendation under Federal Rule of Civil Procedure 72(b) and the Federal Magistrate Act, 28 U.S.C. § 636. Rule 72(b) provides that "[t]he district judge . . . shall make a *de novo* determination . . . of any portion of the magistrate judge's disposition to which *specific* written objection has been made . . . ." FED. R. CIV. P. 72(b) (emphasis added); *see also* 28 U.S.C. § 636(b)(1)(C). "Any part of the magistrate judge's disposition that has not been properly objected to is reviewed for, at most, clear error." *Veney v. Astrue*, 539 F. Supp. 2d 841, 844 (W.D. Va. 2008) (citations omitted). "General objections to a magistrate judge's report and recommendation, reiterating arguments already presented lack the specificity required by Rule 72 and have the same effect as a failure to object." *Elliott v. Commissioner of Social Security*, No. 6:10cv00032, 2011 U.S. Dist. LEXIS 92673 at *6 (W.D. Va. Aug. 19, 2011) (citing *Veney*, 539 F. Supp. 2d at 845). Those portions of the magistrate judge's report and recommendation to which Plaintiff makes no objection should be upheld unless clearly erroneous or contrary to law. *Id.* (citing *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir. 1982)).

## III.   DISCUSSION

The specific grounds for Plaintiff's objection are not immediately apparent. At the

---

[3] Or the secretary's designate, the ALJ. *See Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

outset, Plaintiff lodges a general objection to the entirety of the Report and Recommendation, maintaining: "I have read the reports [sic] and recommendation on my disability[,] and I don't agree with anything that what [sic] said." (Pl. Obj.) The remainder of the objection appears to be an assortment of new evidence that was not before the ALJ, restatement of evidence and argument that were before the ALJ and Judge Crigler, and a few miscellaneous statements that could be construed as specific legal objections. Because different legal standards apply to these various elements of Plaintiff's objection, I will discuss and consider them separately.

A. <u>New Evidence Cited in Plaintiff's Objection</u>

As an initial matter, Plaintiff makes reference to certain medical evidence that was not before the ALJ at the time of his decision. Specifically, she asserts: "I do have neuropathy, fibramyia [sic], and gout in my feet." (Pl.'s Obj.) These diagnoses are not reflected in the ALJ's decision or the medical records submitted for his consideration. Plaintiff also states that she "just got over having MRSA [Methicillin-resistant Staphylococcus aureus] in [her] nose again." (*Id.*) Plaintiff apparently has suffered this illness since the ALJ issued his decision. Plaintiff also provides a list of her current medications, some of which are not reflected in the medical records that were before the ALJ. (Pl. Obj.)

Plaintiff's reference to this additional medical evidence is unavailing. This Court may not consider evidence that was not before the Commissioner. *Miller v. Barnhart*, 64 Fed. App'x. 858, 859 (4th Cir. 2003) (citing *Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996)). As a *pro se* litigant, however, Plaintiff is entitled to liberal construction of her pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Accordingly, I will construe Plaintiff's objection as arguing that I should remand the case to the Commissioner in light of the additional evidence pursuant to 42 U.S.C. § 405(g). In determining

6

whether new evidence demonstrates good cause for remanding a case to the Commissioner, I must consider the so-called *Borders*[4] factors:

> A reviewing court may remand a case to the Commissioner on the basis of new evidence if four prerequisites are met: (1) the evidence must be relevant to determination of disability at the time the application(s) was first filed; (2) the evidence must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant must make at least a general showing of the nature of the new evidence to the reviewing court.

*Miller*, 64 Fed. App'x. at 859–60 (citing *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985)).

The new evidence cited by Plaintiff fails to satisfy this test. Plaintiff has offered nothing to carry her burden of showing that the evidence would reasonably have changed the outcome of the ALJ's decision. She does not state that the additional diagnoses of neuropathy, fibromyalgia,

---

[4] Some confusion persists in the Fourth Circuit as to whether the four-part *Borders* test remains good law. *See, e.g., Blair v. Astrue*, No. 8:11cv1476, 2012 U.S. Dist. LEXIS 40700 at *11 n.4 (D.S.C. Feb, 29, 2012). In *Wilkins v. Secretary, Department of Health & Human Services*, the Fourth Circuit indicated parenthetically that an amendment to 42 U.S.C. § 405(g) had superseded the four-part *Borders* test. 925 F.2d 769, 774 (4th Cir. 1991). Accordingly, some courts in this jurisdiction have applied a simplified test by which remand is warranted if the new evidence is material and the party offering it shows good cause for late submission. *See, e.g., Hayes v. Astrue*, 488 F. Supp. 2d 560, 564 (W.D. Va. 2007) (citing 42 U.S.C. § 405(g)). Under this test, evidence is considered material "'if there is a reasonable possibility that the new evidence would have changed the outcome.'" *Id.* (quoting Wilkins, 953 F.2d at 96). The materiality elements of the two tests, therefore, are largely identical. This simplified test dispenses with the remaining *Borders* factors. Nevertheless, the Fourth Circuit and the district courts have continued to apply *Borders* in evaluating a claim for remand based on new evidence. *See, e.g., Hagerman v. Barnhart*, 96 Fed. App'x. 118, 119 (4th Cir. 2004); *Miller*, 64 Fed. App'x. at 859–60 (citing *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985)); *Allen v. Astrue*, No. 5:11cv64, 2012 U.S. Dist. LEXIS 49673 at *17 (W.D. Va. Apr. 5, 2012); *Farley v. Astrue*, No. 7:11cv263, 2012 U.S. Dist. LEXIS 46309 at *8–9 (W.D. Va. Mar. 20, 2012). Moreover, the Supreme Court has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6, 110 S. Ct. 2658, 110 L. Ed. 2d 563 (1990). Accordingly, I do not find it improper to apply the more stringent *Borders* test. Moreover, in the present case, the main shortcoming of Plaintiff's proffered evidence is its lack of materiality. The test used, therefore, is hardly outcome determinative.

and gout specifically address some concern of the ALJ as stated in his final decision. *See Fricker v. Commissioner of Social Security*, No. 4:11cv00005, 2011 U.S. Dist. LEXIS 123261 at *9 (W.D. Va. Oct. 25, 2011). She does not state that the additional conditions and medications are accompanied by any additional restrictions on her activities or capacity. *See Miller*, 64 Fed. App'x. at 860. Indeed, the list of current medications says very little about her capacity to perform certain work. After all, the medications may improve, rather than worsen, Plaintiff's condition. In addition, Plaintiff's history of MRSA was well-documented in the medical evidence presented to the ALJ, and the ALJ duly considered it. Accordingly, I find that Plaintiff has failed to show good cause to remand this case to the Commissioner for consideration of this evidence.

### B. Statements Construed as Specific Legal Objections

Certain statements in Plaintiff's objection could be construed as stating specific legal objections to Judge Crigler's Report and Recommendation. In keeping with my obligation to construe *pro se* pleadings liberally, *Erickson*, 551 U.S. at 94, I will review for substantial evidence these specific aspects of the Report and Recommendation *de novo*, FED. R. CIV. P. 72(b), *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). First, Plaintiff asks: "How can anyone tell me that I'm not hurting or how I'm feeling every day?" (Pl. Obj.) I construe this as arguing that the ALJ failed to properly evaluate her credibility as to the intensity, persistence, and limiting effects of her symptoms. Next, Plaintiff argues: "How can a doctor that only see [sic] me for ten minutes determine that I'm not disabled and the doctors that I have seen for years no one will listen to? They should know me better than anyone." (Pl. Obj.) She later continues: "Dr. Hartye was my doctor for years he [sic] knows me better than anyone. The state agency only seen [sic] me for a short time." (Pl. Obj.) I construe this as arguing that the ALJ wrongly

discounted the opinions of her treating physician, Dr. James Hartye, and other treating sources in favor of the state agency physicians' opinions. Finally, she argues:

> As far as the VE saying about a bus attendant, restroom attendant[,] or a ticket taker[,] where are they[?] There are so many people out of jobs with being normal [sic] and not having limitation [sic] like I do. Employer's would take them over me anyway because they can do the job. So why would they pick me[?] . . . There are no jobs out there that will allow me to sit and stand as I please or go to the bathroom every 15 to 20 min because I have IBS and having C-Diff.

(Pl.'s Obj.) Plaintiff believes that the ALJ wrongly accepted the vocational expert's opinion that jobs, of which Plaintiff was capable, such as school bus monitor, restroom attendant, and ticket taker, existed in significant numbers in the national economy. I proceed to consider each of these objections in turn.

Plaintiff first argues that the ALJ wrongly determined that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible. Fourth Circuit precedent and the applicable regulations set forth a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms: (1) "there must be objective medical evidence showing 'the existence of a medical impairment(s) . . . which could reasonably produce the pain or other symptoms alleged," *Craig*, 76 F.3d at 594 (quoting 20 C.F.R. §§ 416.929(a) and 404.1529(a)); and (2) "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(1) and 404.1529(c)(1)). The second prong of the test should consider "not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings . . . any objective medical evidence of pain . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical

9

treatment taken to alleviate it." *Id.* (citing 20 C.F.R. §§ 416.929(c)(1)–(3) and 404.1529(c)(1)–(3)). In addition, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776, 788–89 (E.D. Va. 1976)).

The ALJ found that Plaintiff's medical impairments could reasonably produce the symptoms alleged. (R. 25.) He went on to find, however, that Plaintiff's statements as to the intensity and persistence of these symptoms were not entirely credible and generally inconsistent with the record as a whole. (*Id.*) I find that the record contains substantial evidence upon which the ALJ could have reached this conclusion. At the hearing, Plaintiff testified to experiencing the following symptoms: pain, swelling, and numbness in her hands, feet, and legs; difficulty concentrating; inability to sit for more than thirty minutes; having to use the bathroom every thirty minutes or less; inability to stand for more than twenty-five minutes; migraine headaches once to twice per week; constant nausea; anxiety and panic attacks; chest pains and shortness of breath; and fatigue. (R. 44, 45, 46, 47, 48, 49, 50, 51, 60, 61, 62.) The ALJ could have found, however, that the record as whole does not support the alleged intensity and persistence of Plaintiff's symptoms.

The diagnostic test results and treatment notes contained in the record are largely unremarkable. Plaintiff's arterial doppler examination conducted at WakeMed on June 24, 2008, was normal. (R. 410.) Notes from Plaintiff's treatment at WakeMed on August 19, 2008, show that she had a normal gait and range of motion. (R. 389, 392.) Diagnostic tests of her knees performed on November 3, 2008, revealed only "mild" degeneration. (Tr. 282.) Plaintiff's neurological examination and Romberg test performed on November 3, 2008, also yielded

Case 4:11-cv-00028-JLK-BWC   Document 24   Filed 05/07/12   Page 10 of 17   Pageid#: 775

normal results. (R. 284–85.) Subsequent treatment notes reflect that Plaintiff walked normally and had normal strength in her extremities. (R. 259, 343, 347, 354, 356, 425.) All lung examinations and diagnostic tests yielded normal results. (R. 354, 381, 392, 451.) Treatment notes reflect that Plaintiff only complained of increased asthmatic symptoms twice during the relevant period. (R. 456, 459.) Plaintiff's cardiac testing and EKG were normal. (R. 393.) As of December 28, 2009, Plaintiff denied having chest pain, palpitations, shortness of breath, and had normal blood pressure. (R. 563.) At Plaintiff's final appointment prior to the administrative hearing, her blood sugar was within the normal range. (Tr. 583.) Although Plaintiff has suffered recurrent bouts of Clostridium Difficile ("C-Diff"), causing nausea, diarrhea, and abdominal pain, the record shows that she responded to antibiotics and that tests performed on December 27 and 28, 2009, were negative for C-Diff. (R. 291.) Although Plaintiff has a history of anxiety and depression due to situational stressors, the record reflects that she responded well to medication and adjustments in her daily life. (R. 516, 525.) Moreover, Plaintiff had a normal mental status examination and a Global Assessment Functioning score consistent with borderline mild symptoms as opposed to severe mental impairment. (R. 260, 294–300.) Her mental examinations are consistent with minor depressive episodes and a low average I.Q. (*Id.*) In sum, Plaintiff's medical records indicate that most of her symptoms are either mild or have largely subsided with treatment. Furthermore, Plaintiff's course of treatment has been fairly conservative. She has undergone surgery only for her knees and the removal of kidney stones. The objective medical evidence in the record, therefore, provides substantial evidence to support the ALJ's conclusion as to Plaintiff's credibility.

In addition, evidence relating to Plaintiff's daily activities casts doubt on the alleged severity and persistence of her symptoms. At the hearing, Plaintiff testified that she is able to

perform virtually no daily activities except watching television. (R. 61–62.) Yet, in her examination with Dr. M.A. Samia on November 3, 2008, she stated that was able to cook, do laundry, shop, watch television, sit, lie down, dress herself, walk without assistance, turn door knobs, grasp objects, raise her arms over her head, write, read, and walk a block. (R. 283.) A Third Party Function Report – Adult, completed by Shelly B. Shelton on January 1, 2009, maintains that Plaintiff is able to care for pets, go to the grocery store once to twice per week, prepare meals two to three times per week, clean her house for several hours, do laundry once per week, read, lift ten to fifteen pounds, and follow written and spoken instructions well. (R. 200–207, 221.) This range of activity is not consistent with Plaintiff's testimony as to the severity of her physical impairments. In sum, the record contains substantial evidence from which the ALJ could have concluded that Plaintiff's testimony as to the intensity and persistence of her symptoms and their affect on her ability to work was not credible.

Plaintiff next argues that the ALJ erred in discounting the opinions of her treating sources in favor of the non-examining medical experts opinions. In evaluating medical opinions, the ALJ should consider the following non-exclusive factors: "'(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.'" *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005)). Courts "typically accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (internal quotations omitted). Nevertheless, the treating physician's opinion is not entitled to this deference if it proves inconsistent with the objective evidence or other substantial evidence in the

record.  *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 404.1527(d)(2)); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

On October 9, 2009, Plaintiff's treating physician, Dr. Hartye, completed a Physical Residual Functional Capacity Questionnaire on Plaintiff's behalf.  He diagnosed her as having "Diabetes/HBP/Asthma/6AD/Depression."  (R. 576.)  He opined that Plaintiff could not perform the exertional requirements of light work as defined in the applicable regulations.  (R. 576–80.)  Dr. Hartye did not provide any relevant documentation to support his responses despite being asked to do so.  (*Id.*)  The record contains substantial objective medical evidence from which the ALJ could have concluded that Dr. Hartye's opinion was not entitled to greater weight.  As set forth above, Plaintiff's examinations, test results, and treatment notes contained in the record are benign and largely unremarkable.  Moreover, evidence relating to Plaintiff's daily activities proves inconsistent with Dr. Hartye's opinion as to Plaintiff's limitations.  Furthermore, two state agency physicians, Dr. N.B. Shah and Dr. Robert N. Pyle, reviewed the medical evidence and determined, based on the examination and diagnostic test results, that Plaintiff retained the physical capacity perform a range of light work.  (R. 286–93, 302–09.)  Dr. Rudy Warren and Tovah Wax, Ph.d, reviewed the medical evidence relating to Plaintiff's mental capacity and determined that she had only moderate limitations in her ability to understand, remember, and carry out detailed work instructions.  (R. 277–79, 310–12.)

"It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians."  *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (citing *Jenkins v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996)).  Accordingly, "[t]he ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government if they are

inconsistent with the record as a whole." *Id.* (citing *Bentley v. Shalala*, 52 F.3d 784, 786 (8th 1995)). Dr. Hartye's opinion as to Plaintiff's residual functional capacity is inconsistent with the record as a whole, and based on the record, the ALJ could have properly resolved the conflict in favor of the non-examining medical experts.

Evidence submitted by several other treating sources may provide some support for Plaintiff's claim. T. Jason Lane, Plaintiff's attending nurse at WakeMed, submitted a letter dated January 5, 2009, concerning Plaintiff's condition. (R. 493.) It stated only that Plaintiff suffered from "episode[s] of leg swelling that make it difficult for her to stand and walk," and that the "medications used to treat this cause frequent urination requiring unobstructed access to restroom facilities." (R. 493.) He did not state any specific limitations on Plaintiff's ability to perform light work. Accordingly, his letter does not provide any significant evidence to support Plaintiff's claim of disability. The record also contains a letter from Catherine Thrash, LCSW, LCAS, a social worker, in which she opines that Plaintiff "is unable to sustain employment" due to her medical and mental health problems. (R. 92.) Her opinion, however, is not entitled to weight as a treating source because a social worker is not an acceptable medical source under the applicable regulations. 20 C.F.R. §§ 404.1527(a)(7), 416.927(a)(2). Moreover, the ALJ could have properly determined, based on substantial evidence, that her opinion was inconsistent with the record as a whole. Accordingly, the ALJ did not err in resolving the conflict among the medical experts in favor of the state agency physicians and non-examining experts.

Finally, Plaintiff appears to argue that the ALJ wrongly accepted the vocational expert's opinion that jobs, of which Plaintiff was capable existed in significant numbers in the national economy. A vocational expert's testimony as to the existence of jobs that Plaintiff could perform, in response to a hypothetical question based upon an accurate residual functional

14

capacity, constitutes substantial evidence in support of an ALJ's determination. *See Walker v. Bowen*, 889 F.2d 47, 50–51 (4th Cir. 1989). "'[I]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.'" *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). To form a valid opinion, the vocational expert must assume as true the ALJ's determination as to the claimant's residual functional capacity. *See id.* The ALJ posed a hypothetical question that incorporated Plaintiff's residual functional capacity as determined based on the record. (R. 67–71.) For the reasons set forth in the preceding sections, I find his determination as to Plaintiff's residual functional capacity was supported by substantial evidence. Therefore, the ALJ properly relied on the vocational expert's determination that jobs, of which Plaintiff was capable existed in significant numbers in the national economy.

Furthermore, in arguing that she has been unable to find a job that will accommodate her restrictions, Plaintiff appears to confuse the standard applicable to a claim for Social Security Disability Insurance benefits with that applicable to unemployment benefits. For purposes of Social Security Disability Insurance, "work exists in the national economy when it exists in significant numbers either in the region where [the claimant] lives[s] or in several other regions in the country." 20 C.F.R. § 404.1566(a). Whether "[a] specific job vacancy exists for [the claimant]" or the claimant "would be hired if [she] applied for work" is irrelevant to the determination of disability. *Id.* § 404.1566(a)(2)–(3); *see also id.* § 404.1566(c). Plaintiff's inability to find employment due to lack of job openings in her local area or cyclical economic conditions, therefore, does not affect the disability determination. *Id.* § 404.1566(c).

C. Plaintiff's General Objection and Reiteration of Evidence and Argument Presented to the ALJ

The remainder of Plaintiff's objection consists of little more than a general objection, restatement of the evidence and arguments already presented to the ALJ, and strenuous disagreement with the Report and Recommendation as a whole. (*See* Pl.'s Obj.) As stated above, general objections to a magistrate judge's report and recommendation which merely reiterate arguments already presented lack the specificity required by Rule 72 and have the same effect as a failure to object. *Veney*, 539 F. Supp. 2d at 845. In such circumstances, the district court should uphold the magistrate judge's report and recommendations unless clearly erroneous or contrary to law. *Id.* As was recently explained in a similar case:

> The issues that Plaintiff raises in [his] general objection have already been addressed by Magistrate Judge Crigler when they were before him in Plaintiff's summary judgment brief. Allowing a litigant to obtain *de novo* review of her entire case by merely reformatting an earlier brief as an objection "make[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act."

*Id.* at 845–46 (quoting *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). I havv reviewed Judge Crigler's Report and Recommendation and the face of the record for clear error; finding none, I will overrule Plaintiff's objections and adopt Judge Crigler's Report and Recommendations in its entirety.

IV. **CONCLUSION**

For the reasons set forth above, I will **ADOPT** the Magistrate Judge's Report and Recommendation and **OVERRULE** Plaintiff's objections. Accordingly, I will **GRANT** the Defendant's Motion for Summary Judgment and **AFFIRM** the Commissioner's final decision.

16

This case shall be **DISMISSED** from the active docket of this Court.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying

Order to all counsel of record and to Magistrate Judge Crigler.

Entered this 7th day of May, 2012.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE